UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Wallace S. Nolen,                    :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :    Case No. 2:10-cv-241
                                     :
City of Barre, Vermont,              :
Thomas Lauzon, John                  :
Craig,Patricia McDonald,             :
Peter John, Oliver                   :
Twombly, Timothy                     :
Bombardier, Andrew                   :
Marceau, Paul Poirier,               :
Randall Copping, Jon                 :
Valsangiacomo, Steven                :
Mackenzie, Scott Gagnon,             :
Carol Dawes, Peter                   :
O'Grady, Michael P. Smith,           :
                                     :
          Defendants.                :


**OPINION AND ORDER**
(Docs. 4 and 24)

     Plaintiff Wallace Nolen, proceeding *pro se*, brings this
action seeking the release of documents pursuant to
Vermont's Access to Public Records Act, 1 V.S.A. §§ 316-320
("APRA").  He is also seeking damages arising out the City
of Barre's alleged failure to release the requested
documents.  In addition to his Vermont APRA claim, Nolen
alleges federal constitutional violations under the First
and Fourteenth Amendments.

Currently pending before the Court are Nolen's motion for preliminary and permanent injunctive relief (Doc. 4), and the Defendants' motion to dismiss (Doc. 24).  A hearing on the motion for injunctive relief was held on December 14, 2010.  For the reasons set forth below, the motion for injunctive relief is DENIED, and the Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## Factual Background

Mr. Nolen and his wife moved to Barre, Vermont in December 2005, and purchased a home there in January 2006. Nolen claims that beginning in February 2008, he filed requests with the City of Barre Police Department, Fire Department, and certain City officials for the release of documents under the APRA.  He alleges that, to date, the documents have not been released.  Those documents include: (1) police records relating to Nolen himself; (2) police records relating to his wife; (3) police or fire records relating to their residence; (4) records of fire or EMT services provided to a nursing home in Barre "which have not been paid for"; and (5) records relating to a notice from the Barre City Council for Nolen to appear before it concerning his complaint against a former City Council

member.  (Doc. 3 at 2.)

   In April 2008, Nolen sent additional written requests to the Barre Police Department, and specifically to Police Chief Timothy Bombardier "relating to the US Postal Service and/or Patrick Tibbetts an employee of the US Postal Service, Barre Vermont." (*Id.* at 3)  Weeks later, Chief Bombardier allegedly wrote to Nolen and informed him that because Nolen had threatened to file a lawsuit against City officials, Bombardier needed to consult with the City attorney before responding.  Nolen states in his Verified Complaint that "[t]hereafter, Plaintiff has made repeated demands for such records without receiving any of the requested records." (*Id.*)

   In November 2009, Nolen requested records from the Barre Police Department regarding a traffic violation, issued because he had allegedly "disobeyed traffic devices" on the "Prospect St. Bridge." (*Id.*)  Nolen claims that there were no such devices on the Prospect Street bridge at that time, and that the citation was dismissed by an administrative law judge on January 6, 2010 after the complaining police officer failed to appear.

   On October 12, 2010, "in a FINAL ATTEMPT to obtain all

of the records complained of," Nolen appeared before the Barre City Council.  During the public inquiries period he was invited to speak, but was subsequently "interrupted" and informed that because he "was making a last attempt to seek the council's intervention in order to seek compliance with the Vermont Open Records Law before he would seek judicial intervention that he was no longer permitted to continue to speak to the Council in the public comment period."  (*Id.* at 4.)

The Verified Complaint consists of two Counts.  The first seeks injunctive relief, as well as attorneys' fees and costs, under the APRA.  The second is entitled "Civil Rights Action Violations," and alleges both First Amendment and Equal Protection Clause violations.  With respect to the First Amendment, Nolen asserts that he has a "qualified" right to the release of public records.  He also contends that by withholding the documents, the defendants "knew or should have known" that they were obstructing his access to the judicial system, and that their actions were in retaliation for "actual complaints and/or grievances filed by the Plaintiff or which Plaintiff attempted to file . . . ." (*Id.* at 5).  Nolen's equal protection claim is that the

4

City has provided documents to "other requesters." (*Id.*)

For relief, the Verified Complaint seeks $10 million in damages, an injunction requiring the release of the requested documents, and an injunction requiring all Defendants to comply with the APRA with respect to any requests he might make in the future.

As noted above, the Court held a hearing on Nolen's motion for injunctive relief.  Testimony was provided by Nolen and Chief Bombardier.  Nolen testified that he had been criminally prosecuted for his interactions with a postal carrier, and was ultimately convicted on three counts of negligent operation of a vehicle.  Both before and after his prosecution, he was allegedly subjected to threats by police, and was wrongfully issued the Prospect Street bridge traffic ticket.

As to Nolen's records requests, Chief Bombardier testified when Nolen asked him for information about the postal carrier, he looked into the matter and discovered that there was a pending criminal investigation. Consequently, he denied Nolen access to the records.  Chief Bombardier further testified that after Nolen threatened legal action with regard to the traffic ticket, he was

required to consult with counsel.

Nolen contends that he still requires City records in order to develop a time-line that will prove both retaliatory conduct and a conspiracy.  He also hopes to initiate litigation under the Federal Tort Claims Act and the Americans with Disabilities Act regarding his mail delivery, and claims that his inability to access public records is impeding his access to the courts.  With regard to the nursing home records, Nolen alleges that as a taxpayer, he has an interest in seeing what costs have been incurred.  Finally, with respect to his equal protection claim, Nolen's testified that he has seen other individuals granted records requests immediately, and that the delay with respect to his requests had been inordinate.

Just prior to the hearing on Nolen's motion, the Defendants filed their written opposition.  They also filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).  In the motion to dismiss, they argue that they have not been properly served in their individual capacities; that the official capacity claims brought against them are redundant since the City is a party; that with respect to several Defendants, there are no allegations

of their personal involvement in the alleged wrongdoing; and
that a federal court lacks jurisdiction to grant relief
under Vermont's APRA.  At the December 14, 2010 hearing,
Nolen requested an opportunity to respond to the Defendants'
filings in writing.  The Court made clear that he was
allowed to respond, and to amend his Verified Complaint.

Over two months have now passed, and the Court has not
received any further filings from the Plaintiff.  The Court
will therefore rule on the injunction motions based upon the
record as it currently stands.  Because of the potentially
dispositive nature of the motion to dismiss, however, the
Court will address that motion first.

## Discussion

## I.  Motion to Dismiss

On a motion to dismiss, a court must accept as true all
facts alleged in a plaintiff's complaint and must draw all
inferences in his favor.  *See Twombly v. Bell Atlantic
Corp.*, 425 F.3d 99, 106 (2d Cir. 2005) (citing *Todd v. Exxon
Corp.*, 275 F.3d 191, 197 (2d Cir. 2001)).  Furthermore,
construing *pro se* submissions liberally, *see McPherson v.
Coombe*, 174 F.3d 276, 280 (2d Cir. 1999), this Court
interprets Nolen's pleadings to raise the strongest

arguments that they suggest.  *See Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir. 1993).  Indeed, a court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to his lack of legal training.  *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983). Nevertheless, the right of self-representation cannot exempt a party from compliance with relevant rules of procedural and substantive law.  *Id.* at 95.

### A.   Service of Process Upon Defendants In Their Individual Capacities

The Defendants first argue that service upon each of them was insufficient insofar as they are being sued in their individual capacities.  They do not contest the effectiveness of service made upon them in their official capacities.  Because Nolen is proceeding *in forma pauperis*, and pursuant to an Order of this Court, service is being undertaken by the U.S. Marshals Service.

The Court's docket indicates that summonses were delivered to, and accepted by, an individual at the Office of the Clerk for the City of Barre.  (Docs. 6-21.)  Fed. R. Civ. P. 4(e) authorizes service of process on individuals as follows:

(1) following state law for serving a summons in

an action brought in courts of general
jurisdiction in the state where the district court
is located or where service is made, or:

(2) doing any of the following:

(A) delivering a copy of the summons and of the
complaint to the individual personally;

(B) leaving a copy of each at the individual's
dwelling or usual place of abode with someone of
suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent
authorized by appointment or by law to receive
service of process.

The Vermont rule similarly requires service "personally or
by leaving a copies [of the summons and complaint] at the
individual's dwelling house" or by delivery to a designated
agent. Vt. R. Civ. P. 4(d)(1). There is no provision in
either the Vermont or federal rules that would permit
leaving copies of the summons and complaint at a central
municipal office, and no indication in this case the City
Clerk's Office was authorized to accept personal service.
It therefore appears that the Defendants have not yet been
properly served in their individual capacities.

Nonetheless, Nolen is entitled to rely upon the
Marshals for proper service. Pursuant to Rule 4(m) of the
Federal Rules of Civil Procedure, the Court is required to
extend the time for service of process "for an appropriate

period" if the plaintiff "shows good cause for the failure" to effect proper service, and reliance upon the Marshals Service is sufficient to show "good cause" under Rule 4(m). *See Romandette v. Weetabix Co., Inc*., 807 F.2d 309, 311 (2d Cir. 1986); *Micolo v. Brennan*, 2009 WL 742729, at *7 (E.D.N.Y. March 18, 2009) ("courts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of [Fed. R. Civ. P.] 4(m)"); *Husowitz v. American Postal Workers Union*, 190 F.R.D. 53, 57 (E.D.N.Y. 1999).  Morever, the Defendants had actual notice of this action, have not shown any prejudice by the Marshals' failure to effect proper service, and proper service can still be obtained.  *See Romandette*, 807 F.2d at 311; *Perez v. Hawk*, 302 F. Supp. 2d 9, 17 (E.D.N.Y. 2004); *Husowitz*, 190 F.R.D. at 58.  Accordingly, dismissal is not warranted.

Because the Defendants have retained counsel, it may be possible to have counsel agree to accept service for them. The Defendants may instead require personal service.  In any event, service shall be accomplished by the Plaintiff.  The Defendants' motion to dismiss for insufficient service of process is DENIED.

**B.   Personal Involvement**

The Defendants also note that while the Verified Complaint names fifteen individual Defendants, only seven are discussed in the body of the Complaint.  The Defendants have therefore moved to dismiss any constitutional claims being brought against eight of the fifteen named Defendants, arguing that Nolen has failed to allege the required level of personal involvement.

It is well settled that a plaintiff must allege the personal involvement of a defendant in a purported constitutional deprivation.  *See Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  Where the defendant is named because of his or her role as a supervisor, personal involvement may be established by evidence of direct participation in the challenged conduct, or by evidence of the official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the

unlawful conduct of subordinates." *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003).  A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney*, 360 F. App'x 199, 2010 WL 93110, at *1 (2d Cir. Jan. 12, 2010).

Defendants Lauzon, Craig, McDonald, John, Twombly, Dawes and Bombardier are all discussed in the body of the Verified Complaint as having had direct or supervisory involvement in allegedly wrongful conduct.  Defendants Marceau, Poirier, Copping, Valsangiacomo, Mackenzie, and Gagnon are named solely in the caption, and are not discussed anywhere in the remainder of the Complaint. Defendants O'Grady and Smith are named as parties and identified as having been members of the City Council, but there is no substantive discussion of their activities. Accordingly, the Verified Complaint is deficient with respect to these latter eight Defendants, and all constitutional claims against Defendants Marceau, Poirier, Copping, Valsangiacomo, MacKenzie, Gagnon, O'Grady and Smith are DISMISSED without prejudice for failure to allege personal involvement.

### C.   Official Capacity Claims

The individual Defendants next argue that because the City of Barre is a Defendant, the claims brought against individual City officials in their official capacities are redundant.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978) (determining that local governmental officials sued in their official capacities are "persons" under § 1983).  "To succeed on a claim against a municipal officer in their official capacity, the plaintiff 'must still show that a [municipal] custom, policy or practice was the moving force behind the alleged constitutional violations.'"  *Carmody v. Village of Rockville Centre*, 661 F. Supp. 2d 299, 329 (E.D.N.Y. 2009) (quoting *Escobar v. City of New York*, 2007 WL 1827414, at *3 (E.D.N.Y. June 24, 2007)).  As a result, "[a] suit for damages against a municipal officer in their official capacity is the equivalent of a damage suit against the municipality itself." *Escobar*, 2007 WL 1827414, at *3 (citations omitted).  "Based upon the understanding that it is duplicative to name both a government entity and the

13

entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as 'redundant and an inefficient use of judicial resources.'" *DeJean v. County of Nassau*, 2008 WL 111187, at *5 (E.D.N.Y. Jan. 8, 2008) (quoting *Escobar*, 2007 WL 1827414) (citing cases)).

Because of the foregoing, Nolen's claims against the individual Defendants in their official capacities are "merely duplicative of the action against the City." *Escobar*, 2007 WL 1827414, at *3 (citations omitted). Accordingly, and to the extent that the individual Defendants are being sued in their official capacities under 42 U.S.C. § 1983, Nolen's claims against these Defendants are DISMISSED. *See Carmody*, 661 F. Supp. 2d at 329 (collecting cases).

**D. Jurisdiction Over State Public Records Act**

The Defendants' final argument for dismissal is that the Court has no jurisdiction to grant relief under Vermont's APRA.  The APRA provides an enforcement remedy for "[a]ny person aggrieved by the denial of a request for public records under this subchapter . . . ." 1 V.S.A. § 319(a).  That remedy may be pursued, according to the terms

14

of the statute, in "the superior court in the county in which the complainant resides" or "the superior court in Washington County . . . ." *Id.*

To allow Nolen to come directly to federal court would frustrate the intent of the Vermont Legislature, which has granted specific jurisdiction to the state court system. *Cf. Trivento v. Comm'r of Corr.*, 135 Vt. 475, 478 (1977). Furthermore, federal courts are courts of limited jurisdiction, and have the power to hear only those cases authorized by the Constitution or Congress. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Because the Vermont Legislature has designated the state superior courts as the sole avenue for relief under the APRA, and absent any Congressional or other federal authorization, this Court lacks jurisdiction to hear a claim under the APRA. *See*, *e.g., Schuloff v. Fields*, 950 F. Supp. 66, 67 (E.D.N.Y. 1997) (where remedies exist in state court, federal court "does not have jurisdiction to decide whether defendant violated a state law granting the public access to official records"); *In re Shelton*, 2006 WL 3463425, at *2 (E.D.N.Y. Nov. 30, 2006) ("Federal courts do not have jurisdiction to enforce state laws granting public access to

official records."). Nolen's claims under the APRA are
therefore DISMISSED without prejudice.

## II. Motion for Injunctive Relief

Also before the Court is Nolen's motion for preliminary
and permanent injunctive relief. "A preliminary injunction
is an extraordinary remedy never awarded as of right,"
*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365,
376 (2008), and "should not be granted unless the movant, by
a clear showing, carries the burden of persuasion." *Moore
v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506,
510-11 (2d Cir. 2005). Generally, the Court will grant a
motion for a preliminary injunction only if the party
seeking the injunction can show "(1) irreparable harm in the
absence of the injunction and (2) either (a) a likelihood of
success on the merits or (b) sufficiently serious questions
going to the merits to make them a fair ground for
litigation and a balance of hardships tipping decidedly in
the movant's favor." *NXIVM Corp. v. Ross Institute*, 364
F.3d 471, 476 (2d Cir. 2004); *see Citigroup Global Markets,
Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d
30 (2d Cir. 2010). When, as here, "the movant seeks a
'mandatory' injunction – that is . . . an injunction that

16

will alter rather than maintain the *status quo* – [he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits." *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).  With regard to Nolen's requests for a permanent injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n.12 (1987).

### A.   First Amendment Claim

Nolen argues that he has a First Amendment right to the requested documents.  Citing *Hartford Courant v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004), he contends that the Second Circuit has recognized a qualified First Amendment right to inspect public records "subject to a demonstration that suppression is essential to preserve higher values and suppression must be narrowly tailored to serve the interest." (Doc. 4 at 3.)

Turning first to the question of irreparable harm, such harm is often presumed where a constitutional injury is at stake. *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976)

(citing *New York Times Co. v. United States*, 403 U.S. 713 (1971)); *Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citing 11 C. Wright & A. Miller, Federal Practice and Procedure, § 2948, at 440 (1973)).  With respect to First Amendment claims specifically, the Second Circuit has noted that "[i]n the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries."  *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) (citation and internal quotation marks omitted); *see also Bery v. City of New York*, 97 F.3d 689, 693 (2d Cir. 1996) (citing *Elrod*, 427 U.S. at 373 ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury")).

Assuming that Nolen's First Amendment claim satisfies the requirement for irreparable harm, the Court must address the question of whether he is likely to succeed on that claim.  "A failure to comply with [a state public records

law] does not, in and of itself, violate any rights protected by the First Amendment." *Simpson v. Town of Southampton*, 2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007) (citing *Schuloff,* 950 F. Supp. at 68).  Indeed, while the Supreme Court and the Second Circuit have determined that certain types of public information, primarily involving judicial proceedings, are covered by the First Amendment's right of access, they have not extended this right to all government documents.  *See, e.g.*, *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986); *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 120 (2d Cir. 2006) (noting that it is "well established" that the public has a right to certain judicial documents); *Houchins v. KQED, Inc*., 438 U.S. 1, 9 (1978) ("[T]his Court has never intimated a First Amendment guarantee of a right of access to all sources of information within government control."); *Legi-Tech, Inc. v. Keiper*, 601 F. Supp. 371, 374 (N.D.N.Y. 1984) ("it is important to note that the first amendment does not guarantee access by the general public or the media to government property or information").  As the Supreme Court explained in *Houchins*, while parties have a right to obtain information "'from any source by means within the law,' . . . that affords no basis

for the claim that the First Amendment compels others – private persons or governments – to supply information." 438 U.S. at 11 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972)); *see Schuloff*, 950 F. Supp. at 68.

Nolen is seeking a wide variety of documents, including City records pertaining to himself, his wife, his home, a City Council proceeding, and payments by a third party for emergency services.  As noted above, his motion relies heavily upon *Hartford Courant Co.*, which involved the right to access court docket sheets.  380 F.3d at 85.  That decision, which the court determined "emanates from our precedents establishing the public's and the press's qualified First Amendment right to attend judicial proceedings and to access certain judicial documents," does not govern Nolen's claims.  *Id.* at 91.

Nolen's other case citations, including *Copley Press v. Superior Court*, 18 Cal. Rptr. 3d 657 (Cal. App. 4th Dist. 2004), a decision governed solely by California law without any reference to the First Amendment, and *In re Dep't of Investigation of the City of New York*, 856 F.3d 481, 483-44 (2d Cir. 1988) (cited as "*United States v. Meyerson*"), a case involving the law enforcement exemption under the

20

federal Freedom of Information Act, are equally inapposite. In sum, Nolen has not offered any authority to support his claim that the First Amendment entitles him to the documents he is currently seeking, and none from this Circuit exists. The Court therefore finds that he has failed to carry his burden, and will not grant preliminary injunctive relief on this basis.

Nolen further asserts in his Verified Complaint that his First Amendment right of access to the courts has been infringed. "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)), *cert. denied*, 525 U.S. 823 (1998); *accord Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) ("However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of

court."). As the Supreme Court noted in *Christopher*, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." 536 U.S. at 416.

Here, Nolen alleges that the Defendants "knew or should have known that the fact that release of such records to Plaintiff would permit the Plaintiff to successfully sue for damages against some of the Defendants for the deprivations of Plaintiff's civil and other rights." (Doc. 3 at 5.) At the December 14, 2010 hearing, he informed the Court that he was requesting documents in order to develop a "time-line" that would establish retaliatory and conspiratorial conduct.

Nolen's burden in his motion for injunctive relief, as stated above, is to demonstrate a substantial likelihood of success on the merits. *Doninger*, 527 F.3d at 47. Bare allegations of potential claims are insufficient to meet this burden. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (speculative claim insufficient for equitable relief); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary

22

injunction."); *Hancock v. Essential Resources, Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Nolen's speculation that the requested records may be required to file a lawsuit is, therefore, insufficient.

Nolen further claims in his Verified Complaint that the release of the requested documents would have assisted him in his criminal trial. (Doc. 3 at 5.) At the hearing, Nolen made reference to a request by his court-appointed attorneys for postal records under the federal Freedom Of Information Act. He did not reference any documents requested from the City of Barre or its officials during the course of the criminal proceedings. Furthermore, it is not clear how, given his representation by counsel, the availability of City records impacted his right of access to the courts in his criminal case. *See Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004) ("[T]he assistance of an attorney . . . is a permissible and sufficient means of satisfying the right of access to the courts . . . .").

With respect to his First Amendment retaliation claim, Nolen "must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse

action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) (quoting *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002)).  The protected speech in question allegedly consisted of "complaints or grievances" that were actually filed or that were "illegally obstructed." (Doc. 3 at 5.) These claims again involve significant speculation, and do not support an award of preliminary injunctive relief.

To the extent that Nolen is claiming that his records requests themselves constitute protected speech, he has failed to show that he his likely to succeed on his First Amendment claim, as discussed above. *See, e.g., Milardo v. City of Middletown*, 528 F. Supp. 2d 41, 45-46 (D. Conn. 2007) (City employee's request for city records was not protected under First Amendment, and thus could not serve as a basis for claim that he was terminated for engaging in constitutionally protected speech).  Furthermore, he offers only conclusory allegations of a causal connection between his requests and any subsequent mistreatment or conspiracy. *See McKenna v. Wright*, 2002 WL 338375, at *13 (S.D.N.Y. March 4, 2002) (holding that conclusory claims are

insufficient to show likelihood of success on retaliation claim) (citing *Gill v. Mooney*, 824 F.2d 192, 194-195 (2d Cir. 1987) (affirming dismissal of claim which alleged retaliation in wholly conclusory terms)). The Court thus finds that Nolen failed to carry his burden for a preliminary injunction on the basis of a retaliation claim.

**B.   Equal Protection Claim**

Nolen's civil rights claims also include a charge that "[t]he City of Barre upon information and belief has in the past released similar records to other requesters thereby violating Plaintiff's equal protection rights." (Doc. 3 at 5.) This allegation suggests a claim under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike." *Latrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). When, as here, a plaintiff is not claiming racial or some other sort of class-based discrimination, he may still prevail on a "class of one" equal protection claim if he shows that (1) "[he] has been intentionally treated

25

differently from others similarly situated and" (2) "there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2000).

The Second Circuit recently made clear that "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston v. Town Bd. For the Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). "Accordingly, to succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 59-60.

Nolen's undeveloped allegations offer little factual support for the conclusion that his treatment by the Town was intentionally discriminatory. Specifically, he has not

provided evidence of those "similarly situated" persons who requested, and received, records that were the same or similar to those he is requesting now.  *See, e.g.*, *Cassidy v. Scoppetta*, 365 F. Supp.2d 283, 290-91 (E.D.N.Y. 2005) (finding plaintiffs "failed to allege the most fundamental aspect of an equal protection claim" when they did not compare themselves to similarly situated individuals); *see also Ruston*, 610 F.3d at 59.  The Court therefore declines to grant a preliminary injunction on the basis of an alleged equal protection violation.

### C.    State Law Public Records Claim

As discussed above, this Court lacks jurisdiction to award relief under Vermont's public records law. Accordingly, it cannot grant an injunction on the basis of that law.  The motion for a preliminary and permanent injunction is therefore DENIED.

### Conclusion

For the reasons set forth above, Nolen's motion for preliminary and permanent injunctive relief (Doc. 4) is DENIED.  The Defendants' motion to dismiss (Doc. 24) is GRANTED in part and DENIED in part.  Specifically, Nolen's claims under the APRA are DISMISSED without prejudice.  All

27

official capacity claims against Defendants Lauzon, Craig, McDonald, John, Twombly, Dawes, Bombardier, Marceau, Poirier, Copping, Valsangiacomo, Mackenzie, Gagnon, O'Grady and Smith are DISMISSED without prejudice.  All constitutional claims against Defendants Marceau, Poirier, Copping, Valsangiacomo, Mackenzie, Gagnon, O'Grady and Smith in their individual capacities are also DISMISSED without prejudice.  The Plaintiff is hereby ORDERED to complete service upon the remaining individual capacity Defendants (Lauzon, Craig, McDonald, John, Twombly, Dawes, and Bombardier).

Dated at Burlington, in the District of Vermont, this 1st day of March, 2011.


/s/ William K. Sessions III
William K. Sessions III
District Court Judge

28